**FLYNN & ASSOCIATES, LLC**
**RICHARD M. FLYNN, ESQUIRE (ATTORNEY ID 3431978)**
**ALEX FLYNN, ESQUIRE (ATTORNEY ID 196302016)**
439 Monmouth Street
Gloucester City, NJ 08030
Phone: 856-456-3535
rflynnlawllc@gmail.com
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SUNIL DUTT, ON BEHALF OF HIMSELF AND ALL OTHER PERSONS SIMILARLY SITUATED**<br>**PLAINTIFF**<br>**v.**<br>**ABK PETROLEUM CORP., ABC CORP.S NO.S 1-10 (SAID NAMES BEING UNKNOWN AND FICTITIOUS), SUNNY SINGH A/K/A SONNY SINGH, PRABHJIT SINGH, AND KAMALJIT SINGH**<br>**DEFENDANTS** | **CIVIL ACTION**<br>**DOCKET NO: 18-14117-RMB**<br><br>**CERTIFICATION OF ALEX FLYNN, ESQ., COUNSEL FOR DEFENDANTS** |

I, Alex Flynn, Esq., of full age, hereby certify as follows:

1. I am an attorney admitted to practice law before this Honorable Court.

2. I have personal knowledge of the facts asserted herein.

3. Plaintiff, through counsel, has asserted that he was not paid a sufficient wage to comply with Federal or State law. After the filing of the Complaint and service upon Defendants, Defendants met with Plaintiff's counsel to see if they could reach a

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

reasonable settlement of the claim without litigation. While Defendants stand on the fact that they went to Plaintiff's counsel in good faith to try to reach a settlement, asked him what terms would be acceptable to Plaintiff and what legal fees Plaintiff's counsel would assert as due to his firm, Plaintiff's counsel has continually raised this conference to the level of hyperbole, asserting that they had tried to bribe him.

4. Furthermore, Plaintiff's counsel lacks any evidence of this beyond his own self serving statements.

5. Thereafter, Defendants retained counsel and the litigation was underway.

6. From the outset, Plaintiff's counsels were unfamiliar with the Local Rules for the District of New Jersey and were strongly counseled by Judge Williams to carefully review same at the Initial Conference before the Court on March 12, 2019.

7. Thereafter, Plaintiff's counsel delayed this matter by failing to issue out discovery requests until May 14, 2019, less a week short of eight months after the Complaint was first filed.

8. Defendants issued out, via email, their Fed. R. Civ. P. 26 disclosures on March 28, 2019. The disclosures were signed Defendants individually and sent under the email signature of counsel to Plaintiff's counsel. See Exhibit A.

9. In both the Defendants' Fed R. Civ. P. 26 Disclosures and their discovery responses, they made clear that they did not have in their possession the payroll and tax records that the Plaintiff sought, that their accountant, RAM Associates, had all of

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

those records and they provided contact information as well as detail for what records were in the accountant's possession.

10. Defendants responded to those discovery requests in good faith and in sufficient time and our firm served their responses upon Plaintiff's counsel on June 19, 2019. See Exhibit B. The following day, Plaintiff's counsel sent an email detailing his objections to the discovery responses. See Exhibit C. On June 25, 2019, Defendants' counsel responded to Plaintiff's counsel's email. The same day, Plaintiff's counsel asked Defendants' counsel for consent to seek an adjournment of the deadline for Plaintiff's Motion to Certify the Class/Collective Action. See Exhibit C.

11. Defendants' counsel freely offered that adjournment in a spirit of cooperation and sought Plaintiff's counsel's consent to similarly reschedule any deadline for an opposition thereto. See Exhibit C. Despite Defendants' counsel sending this request via email, same was entirely ignored by Plaintiff's counsel and a response was never provided.

12. As a result of this email exchange on June 25, 2019, Plaintiff's counsel was already aware that one of Defendants was leaving for vacation in early July and Defendants' counsel were going away on vacation from mid July until the beginning of August, therefore the next opportunity for a review of these issues with defendants would be in August.

13. On August 13, 2019, Plaintiff's counsel sent a brief email on this matter. On August 30, 2019, Defendants' counsel reviewed the Plaintiff's objections with Defendants

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

and was advised that the clients stood on their discovery responses. Plaintiff's counsel was advised of this position on September 6, 2019. See Exhibit D.

14. On September 9, 2019, the Plaintiff's counsel filed a letter, which they improperly docketed as a motion, to seek the discovery in advance of the previously scheduled telephone conference with Judge Williams set for September 10, 2019. During the telephone conference the following day, the Court addressed Plaintiff's demands for discovery with all counsel and directed that the Court was overruling some of the Defendants' objections. However the Court also chastised Plaintiffs' counsel for the fact that they had represented to the Court that they did not know the identities of other employees when in fact those identities were disclosed along with approximately 200 pages of timesheets for same. As a result, the Court verbally Ordered that Defendants were to update their discovery responses, obviating any formal briefing or hearing on the matter. Furthermore, the Court Ordered that Plaintiff's counsel was to reform a large number of the discovery requests which were improper.

15. At the time of the September 10, 2019 telephone conference, undersigned counsel had no reason to believe that there would be any form of undue delay in the Defendants' accountant's cooperation or production of those records. Therefore, the offer that our offices should have the discovery within one to two weeks was made in good faith based on the circumstances known to me at that time. Moreover, during that call, undersigned counsel advised the Court that his clients had already told him, and in fact, had already disclosed in their R. 26 disclosures that their

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

accountant, Ram Associates, was in possession of the records demanded and that Defendants did not have those records.

16. As a result, Plaintiff's counsel then issued out the second set of Plaintiff's discovery requests on September 12, 2019. The same day and again on September 14, 2019, I contacted our clients via email and advised of the need to schedule an appointment with them. See Exhibit E.

17. To further the case in good faith and in the spirit of the preceding telephone conference with Judge Williams, undersigned counsel made a telephone call to Ram Associates, the Defendants' accounting firm, asking to speak with Mr. Ram (which I later learned is apparently abbreviated from P.K. Ramachandran), the accountant, and demanded the documents related to the Plaintiff's claims. This call went unreturned for several days.

18. I contacted their offices again by telephone on September 19, 2019, at which time I demanded both a call back and Mr. Ram's email address since no response was provided to my prior telephone call.

19. After both calls went unreturned, I sent an email to Mr. Ram on September 19, 2019, explaining in detail the need for production and the urgent nature of the matter. Attached as Exhibit F.

20. Undersigned counsel also reviewed these discovery requests, the need to provide further responses and other issues related to the case, including the potential for settlement, during a three hour conference with Defendants on September 19, 2019.

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

Undersigned counsel and Richard M. Flynn, Esquire, also Defendants' counsel in this matter, explained, strained, and candidly, yelled, about the importance of providing the necessary responses to the discovery requests when meeting with Defendants. It was at this time that our clients advised that they had authorized the accountant to provide all of the records to our firm and did not understand why he was not cooperating. Despite Defendants' counsel taking every reasonable action to get the Defendants accountant to comply with these requests, the accountant simply refused to cooperate and Defendants were steadfast in their positions about the remaining discovery responses already provided.

21. Furthermore, not only did undersigned counsel send three messages to the accountant between September 12 and September 19, but after receiving no reply to those messages, I again emailed Mr. Ram on September 30, 2019, demanding the documents again. That email is attached as Exhibit G.

22. The delay caused by the accountant's firm, especially in producing a response to such a voluminous request, is certainly not the fault of undersigned counsel, his firm or the Defendants when we had made clear the importance of producing same to the Defendants and they agreed.

23. At all times, undersigned counsel acted in good faith in the course of discovery by providing access to the information in Defendants' possession, attempting to conclude discovery disputes and repeatedly directing the accountant to provide the documents that he held.

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

24. In advance of the Court conducting the November 25, 2019 telephone conference submitted a status letter to the Court, Exhibit H (ECF #29), as Ordered in ECF # 28, and during that telephone conference undersigned counsel detailed to the Court the thorough efforts made by Defendants' counsel to obtain and produce the complete discovery and import upon the clients and their accountant the significance of compliance with the Court's Orders.

25. During that telephone conference, Judge Williams was firm about the Defendants' need to produce these records, but also very understanding of the fact that our clients in this matter were making this quite difficult. Though the telephone conference was off the record, I plainly advised Judge Williams and Plaintiff's counsel that our firm was doing everything in our power to obtain cooperation despite the behavior of our clients and the accountant. The Court kindly advised that it understood and appreciated the situation.

26. Immediately after the telephone conference, I again called and discussed potential settlement options for this matter with Plaintiff's counsel via a separate telephone call.

27. Simultaneously, Defendant ABK Petroleum Corp. filed a bankruptcy petition through our firm. Our firm was directed to take this action by Kamaljit Singh, an owner of ABK Petroleum Corp. because the company was ceasing operations. This was detailed to the Court and opposing counsel.

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

28. Furthermore, reflected in the bankruptcy petition was the fact that one of the major debts of the corporation was Plaintiff's unliquidated and disputed claim in this litigation, while Defendant ABK Petroleum Corp. had assets in the form of security deposit funds which were held by third parties.

29. Defendants directed undersigned counsel to file that bankruptcy because at the time they had serious doubt as to whether the security deposits would be returned to them because of disputes with the gas station owners. They advised our firm that they needed to, intended to, and in fact eventually did, use the security deposit monies as the initial payment for settlement in *this matter*; therefore, it was imperative that those funds be recovered so that they could be applied toward Plaintiff's claims.

30. Throughout this period, undersigned counsel was indeed in communication with Plaintiff's counsel about the matter. We discussed settlement positions on multiple occasions and were working toward resolution. While Plaintiff's counsel fails entirely to mention this, it was the situation.

31. Moreover, while Defendant Kamaljit Singh was responsive to counsel's communications about the matter, Defendants Sunpreet Singh and Prabhjit Singh failed  to respond to counsel's emails addressing the serious nature of this matter despite several attempts to explain this to them.

32. In December 2019, undersigned counsel had negotiation and settlement discussions with Plaintiff's counsel. Plaintiff's counsel contacted our offices on or about

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

December 2, 2019 about half an hour after we had received very troubling news about Richard Flynn, Esq.'s health and our secretary was still crying when she answered Plaintiff's counsel's call. Later that same day, December 2, 2019, I returned the call, spoke with Plaintiff's counsel and advised I would be in touch with our clients about his settlement position.

33. Furthermore, as the Court can see, on December 10, 2019, undersigned counsel advised his clients of Plaintiff's settlement position and again advised his clients of the imperative nature of producing these records via email and, again, Defendants failed to respond to same. See Exhibit I.

34. Later in December 2019, undersigned counsel took all necessary steps to draft and circulate the Discovery Confidentiality Order in this matter for filing with the Court. Plaintiff's counsels provided no input or assistance with same, merely signing it. Despite this lack of input, our firm took solely all steps necessary to file the Discovery Confidentiality Order by the deadline established by Judge Williams in our preceding telephone conference. See Exhibit J.

35. Remarkably, in January 2020, when the discovery responses issue was again raised by Plaintiff's counsel, Plaintiff's counsel was still asking the Court for permission to send a subpoena and wasting time by not sending it.

36. Pursuant to Fed. R. Civ. P. 45, after the Fed. R. Civ. P. 26(f) initial conference, Plaintiff's counsel had every right to send a subpoena at any time in the course of the litigation to Defendants' accountant as a third party to the litigation and could

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

have made a direct command that the demanded documents be provided from the accountant's offices.

37. There was nothing preventing Plaintiff's counsel from unilaterally sending a subpoena, and in fact, undersigned counsel encouraged the idea in the telephone conferences with Plaintiff's counsel and the Court on multiple occasions since the accountant was not providing information to our firm. Plainly, had Plaintiff's counsel acted in the most reasonable manner here, they could have issued the subpoena at any time since they had first learned of the accountant's identity in March 2019.

38. Despite all of the Plaintiff's counsel's vitriolic attacks upon Defendants' counsel, had Plaintiff's counsel acted diligently in this effort, a subpoena directly to the accountant would have provided Plaintiff's counsel the pathway to pursue the issue directly with the accountant and the means to address the accountant's noncompliance with the Court directly.

39. On January 7, 2020, Plaintiff's counsel emailed our firm a copy of the Subpoena sent to the accountant. See Exhibit K. According to the Subpoena, the date for production was set for January 30, 2020 at 12:43 am in Mr. Knox's offices. Exhibit K. Remarkably, during the *January 28, 2020 telephone conference,* Plaintiff's advised the Court that they had received no response to their Subpoena, yet *Plaintiff's counsel failed to inform the Court* that the time to comply with the Subpoena *would not expire until January 30, 2020.* Plaintiff's counsel instead advised the Court that he

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

had not received any response from the accountant and was thus seeking leave to file a Motion to Compel. The Court granted Plaintiff that request.

40. Defendants' counsel was surprised and frankly disappointed to learn during that call that the subpoena had been ignored by the accountant's offices.

41. Undersigned counsel was ill with an exceptionally rough strain of influenza or something similar for approximately two to three weeks in February 2020 until the beginning of March 2020. I was under the care of a physician, who advised that I was highly contagious to those around me and prescribed medication. Therefore, I was out of the office for this period of time.

42. However, to ensure that our firm followed up on this matter, Richard M. Flynn, Esq., scheduled and held a conference with Defendant Kamaljit Singh on February 24, 2020. Without breaching the privilege and confidentiality of that conference, Mr. Singh was equally surprised, disappointed and quite irritated that the accountant had not produced the records.

43. During the February 24, 2020 conference, Richard M. Flynn, Esq. again contacted the accountant's offices. It was at that time that our firm and our clients learned the accountant had indeed complied with the subpoena and mailed a SEVENTEEN AND THREE QUARTER POUND BOX containing approximately nine hundred pages of the demanded documents on January 27, 2020 via overnight express. As a result, the documents were in fact actually at Mr. Knox's offices on January 28, 2020. See Exhibit L.

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

44. This is critical because while Defendants and our firm were unaware of the accountant's production at the time of the January 28, 2020 telephone conference with the Court, Plaintiff's counsel's representation to the Court that the information was not produced and demand for leave to file a Motion to Compel was utterly baseless because the documents were produced that day, but they were also produced in advance of the deadline under the Subpoena.

45. Had Plaintiff's counsel simply called the accountant's offices to check on the status of the Subpoena response or even checked his mail in advance of the telephone status call, they could have prevented all of the hostility surrounding this issue.

46. As a result, Plaintiff's entire endeavor with regard to the subpoenaed documents resulted in the production of the documents as demanded by Plaintiff within the time demanded by Plaintiff. Therefore, Plaintiff never actually had a basis to seek a Motion to Compel and, despite pursuing it verbally with the Court, never actually filed same. *Moreover, Plaintiff's counsel NEVER advised the Court or Defendant's counsel of his receipt of the accountant's production under the subpoena and never provided a copy of the production, despite his duty to provide same.*

47. The accountant's offices emailed their copy of the subpoena response to our offices on February 24, 2020. See Exhibit L. Given the voluminous and highly sensitive nature of these responses, undersigned counsel has attached only the email the enclosed cover letter and proof of overnight mailing but not the approximately 900

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

pages of records which were apparently provided by the accountant to the Plaintiff's counsel.

48. As stated, undersigned counsel was ill in February and missed two to three weeks of work with an exceptionally rough strain of the flu. Upon my return to the office, I reviewed the emailed copy of the subpoena response with Richard M. Flynn, Esquire.

49. On review, in our opinion, even this voluminous response from the accountant was probably going to generate another battle from Plaintiff's counsel over its scope.

50. Candidly, Defendants' counsels were fed up with the accountant's behavior and the delays *the accountant was causing* in this litigation.

51. Therefore, we, undersigned counsel and Richard M. Flynn, Esq., demanded a meeting with Defendants to address the problem which was *made by the accountant.*

52. On March 3, 2020, we conducted another multiple hour conference to address the now absolutely imperative nature of complete responses to discovery. Again without providing inappropriate information, Defendants advised at that time that they had directed the accountant to provide full cooperation and did not understand what the issue was. They further advised that they would do everything in their power to see that his offices provided whatever other available data was sought.

53. To this end, our offices again called the accountant's firm during the March 3, 2020 conference and a meeting was demanded between the accountant, Mr. Ram, personally and Defendants' counsels. At that time, Mr. Ram finally took our telephone call, advised that he would meet with us on March 5, 2020, two days later, and requested that we email him a list of the records to be produced at the conference so that his staff could begin to gather same. During this call, both undersigned counsel and Richard M. Flynn, Esq., made clear that the accountant would need to provide the Defendants' complete records at this conference, without excuses.

54. Undersigned counsel emailed a confirming letter detailing all of the records to be produced by the accountant to the accountant directly on March 3, 2020. See Exhibit M.

55. Furthermore, on March 3, 2020, during the conference with Defendants, Defendants' counsel stepped out and again contacted Plaintiff's counsel by telephone and discussed potential settlement options. Similar to the offers of settlement which had previously been made by Defendants in December and January, a reasonable *six figure offer* was extended, which would have consisted of a lump sum and a stream of payments. During this call, Plaintiff's counsel again complained about the bankruptcy filing and Defendants' counsel explained that the clients had directed the bankruptcy based upon the security deposit concerns and that the clients intended to use the funds from the security deposits to make the first initial installment payment. Instead of accepting this explanation, Plaintiff's counsel

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

instead took the tack of accusing the Defendants of acting in bad faith. Plaintiff's counsel stated *his* settlement position would not change since *he assumed* the Defendants had plenty of money to pay any sum demanded. As a result, despite Defendants having made approximately their fourth or fifth proposal to settle the case by this point, Plaintiff's counsel rejected the latest proposal out of hand as too low and advised he would discuss a counteroffer with his client.

56. Two days later on March 5, 2020, both undersigned counsel and Richard M. Flynn, Esq. both traveled to the accountant's office to obtain the documents demanded by Plaintiff.

57. Upon arrival, the accountant's staff told us that contrary to what we were advised on March 3, Mr. Ram would not be meeting us and that they would email documents to us. We did not accept this excuse and demanded that Mr. Ram and his staff make themselves available to us.

58. As the Court would expect, not only had we emailed the list of documents required in advance, but we also took copies of the Plaintiff's discovery requests and the subpoena with us to ensure compliance with same.

59. **It took nearly four hours of arguing** with Mr. Ram's staff and having our clients contact Mr. Ram and his staff directly **before we were even permitted to confer with any of the accountant's staff and they began to obtain Defendants' records.**

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

60. Finally, we were permitted to actually meet with a staff member, Mr. Raju Shah. We carefully reviewed every single word of the discovery demands, as well as the claims made in the case and what documents were required. We demanded that Mr. Shah go through each request, line by line, item by item, to ensure it was fully responded to, then we would permit him to move to the next.

61. Throughout the day, we were repeatedly on the phone to our clients (*admittedly, these were probably some of the most brusk conversations we have ever had with any client*) about their need to contact the accountant's staff directly and push for the immediate production of these records to our firm.

62. It was a miserable experience.

63. We were beyond adamant about the immediate production of every single record held by the accountant which related to the clients in any way by the end of the day. Despite agreeing to meet with us at 10:00 a.m., the accountant, **Mr. Ram, finally appeared at his office around 3:00 p.m.** and advised that he has outsourced the large majority of his operations to India, therefore all records had to be electronically requested from his staff out of the country and then transmitted to his very limited staff in his New Jersey offices.

64. **Mr. Ram again tried to push Defendants' counsels off**, stating that he would request the information and email it to us when received. **We refused** his attempts to duck his obligation to produce these records and instead **advised that we would stay there the entire day, get a hotel room if necessary and return for as many**

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

**days as it took until the records were produced.** Despite having the clients on the speakerphone and having them direct the accountant to provide the records, it was only upon our absolutely firm insistence that the records be produced that thousands of pages were eventually produced to counsel on a flash drive at approximately 7:30 p.m. that night. **After nine and a half grueling hours in the accountant's offices, we were still there, despite the late hour, to ensure that the records were provided.** [1]

65. **During the course of our time at the accountant's offices on March 5, 2020, Richard M. Flynn, Esq. spoke with Plaintiff's counsel via telephone about a potential settlement. It was in this call that Plaintiff's counsel offered the $130,000.00 settlement with $40,000.00 as an initial payment and the remainder in a stream of $2,500 payments over 36 months. That offer was accepted by Defendants shortly thereafter and the litigation was verbally settled.**

66. As a result, the discovery in the case became irrelevant because a settlement was reached. While undersigned counsel, his firm and Defendants vehemently deny the outrageous allegations raised by Plaintiff's counsel, the fact remains that in March 2020, the parties entered into a verbal settlement agreement.

[1] Even when the records were provided, there were still a small amount of records which were to be researched and subsequently emailed from the accountant's staff in India to our offices. No further records were produced by the accountant, however, this is immaterial, because of simultaneous settlement discussions.

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

67. To this end, on March 10, 2020, Plaintiff's counsel emailed a first draft of the settlement agreement. See Exhibit N.

68. On March 18, 2020, I had a lengthy telephone call with Kamaljit Singh in which he advised that he had encountered an unforeseen delay in obtaining the funds from the security deposits because of COVID-19. He advised me that he had acted promptly to obtain the funds and taken all reasonable steps, but that the staff for business holding those funds had been placed on emergency limitations because of COVID-19 and the process was taking longer than he had expected. Without unnecessarily breaching confidentiality or privilege, I trust the Court appreciates that during this call, my guidance was that he would need to obtain those funds promptly since they would be due shortly after the settlement agreement was executed.

69. Since we could not conduct an in person conference at that time, Kamaljit Singh advised that when a final version of the settlement agreement was ready, we could contact him and he would be sure to advise the other defendants directly since we had previously encountered difficulty in obtaining their responses to emails.

70. Several provisions of the Plaintiff's first draft were unacceptable to defendants, so on March 25, 2020 a revised draft was circulated by Defendants' counsel with proposed language. See Exhibit O. This email was sent in advance of the telephone status conference with the Court and was provided as promptly as was possible

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

under the circumstances of COVID-19 forcing New Jersey, our firm and our clients into a state of lockdown.

71. Just as the Courts were required to do, our firm was required to adapt our technology and working routines to meet the governmental restrictions and health precautions necessary to control the spread of a deadly and novel virus.

72. On March 25, 2020, the Court conducted a brief telephone hearing, was advised of the settlement and afforded the parties the typical period of sixty days to consummate the agreement documents.

73. I respectfully highlight that at this time, the guidance from our state and federal leadership was that the virus and shutdown would require businesses to close for approximately two weeks. Tragically for the hundreds of thousands of families with seriously ill and deceased family members, the virus continued to ravage our area and restrict our ability to practice law, meet with clients and conclude this particular matter as was originally planned.

74. The impact of the virus on our firm cannot be underestimated. It completely changed how we practiced law in an instant and frankly, it continues to change the practice on almost a daily basis.

75. Furthermore, because of the December 2, 2019 telephone calls, Plaintiff's counsel was already aware that Richard Flynn, Esq. had significant health complications which thankfully do not ordinarily impact his ability to travel and practice law, but did in fact almost entirely limit his ability to practice in light of the risk of potential

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

transmission of COVID-19. Since Saint Patrick's day 2020, Richard M. Flynn, Esq. has been working from home and has only left the house on approximately five necessary occasions.

76. We are taking no chances with the health and safety of our firm, family and clients.

77. As I trust the Court is already aware, our firm is a family practice. Notwithstanding the tremendous impact of this virus on our firm and family, we continued to adjust to working remotely and attempt to move every case in as expedient a manner as was possible. I did in fact promptly communicate with him then and always throughout this case.

78. After the telephone conference with the Court on March 25, 2020, Plaintiff's counsel apparently reviewed Defendants' counsel's proposed settlement draft and found it unacceptable to his desires. Plaintiff's counsel then returned a further set of revisions via email. See Exhibit P.

79. Plaintiff's counsel never contacted us again until he filed the Motion for Sanctions.

80. After careful review of the third proposed settlement draft, our firm recommended that our clients execute same. I advised Kamaljit Singh of this on April 8, 2020 via text message. Mr. Singh responded back that one of his employees had COVID-19 and he would need some time to return the documents to me. I followed up with a message asking if Mr. Singh would be able to sign and return the documents on Monday, April 13, 2020. I received no response to that message. See Exhibit Q.

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

81. Thereafter, we emailed all of our clients a copy of the third proposed agreement on April 15, 2020 and advised that they needed to carefully review and execute the draft so long as the terms were acceptable to them. That email is attached as Exhibit R.

82. On April 21, 2020, after nearly a week of receiving no response from our clients, our firm sent another email, attached as Exhibit S.

83. Throughout this time, we remained well within the typical sixty day window set by the Court and I trust that the Court was also providing flexibility in enforcing those Orders in light of the universal impacts from COVID-19.

84. Kamaljit Singh finally responded late on April 21, 2020, see email attached as Exhibit T.

85. In a conversation after that response, we learned from Mr. Singh that one of his employees had tested positive for COVID-19 in either late March or early April and that Mr. Singh and some of his other family members had been in direct contact with that employee. As a result, Mr. Singh and his entire family were tested and mandatorily quarantined at home for a period of at least two weeks to avoid potential spread of COVID-19.

86. Among Plaintiff's counsel's various assumptions and suppositions, Plaintiff fails to understand that in addition to the health concerns for Defendants' counsel, Kamaljit Singh's household consists of his elderly mother, himself and his wife and their children, including young children. As a result, their household was especially

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

vulnerable to the impacts of COVID-19 and he took no chances with their health. Thankfully, Mr. Singh's employee apparently was able to recover and once Mr. Singh and his family were permitted out of the prophylactic quarantine, he was ready to proceed with signing the documents.

87. Kamaljit Singh delivered the originals of his signed settlement documents to undersigned counsel on May 4, 2020, as well as a check for the initial payment of settlement proceeds to Plaintiff's counsel. Mr. Singh verbally advised undersigned counsel at that time that he had not yet received the security deposit refund, therefore the settlement check was not good but that he would advise as soon as it was valid so that it could be deposited into our firm's Trust account and then a Trust check could be issued to Plaintiff's counsel.

88. The following day, May 5, 2020, Defendants' counsel emailed the remaining defendants, Prabhjit Singh and Sunpreet Singh, to reiterate their need to sign the settlement documents and return them immediately. See Exhibit U.

89. For whatever reason, neither Prabhjit Singh nor Sunpreet Singh responded to counsel's emails.

90. On May 14, 2020, Kamaljit Singh texted undersigned counsel to ask if Prabhjit Singh and Sunpreet Singh had signed the agreement yet, to wit I answered that they had not and we needed their signatures. See Exhibit V.

91. On May 20, 2020 Kamaljit Singh texted again, advising that Sunpreet Singh would sign the following day and on May 21, 2020. See Exhibit W. Kamaljit Singh delivered

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

the executed settlement agreement with the signatures from Prabhjit Singh and Sunpreet Singh to our offices.

92. On June 1, 2020, undersigned counsel texted Kamaljit Singh again about the status of the settlement check and on June 2, 2020, Kamaljit Singh responded that he would let me know by the end of that day. See Exhibit X. No further response was received.

93. On June 15, 2020, Kamaljit Singh called undersigned counsel to advise that the $40,000.00 necessary for settlement was in his possession the check originally tendered on May 4, 2020 was now valid.

94. On June 17, 2020, undersigned counsel deposited the check in his firm's attorney trust account. Even this deposit was made more difficult by COVID-19 because our Trust Account is held at Bank of America. Bank of America closed a significant number of the branches in our area in response to COVID-19, therefore I had to find a branch that had lobby hours to deposit the check, confirm that the branch would in fact have staff on site, plan a trip and travel to same. All of this was achieved within 48 hours from Mr. Singh's telephone call.

95. The following morning, June 18, 2020, undersigned counsel saw an email notice from PACER that Plaintiff's counsel had filed his Motion for Sanctions. Without wasting time, I promptly called Plaintiff's counsel Alexander Kadochnikov, Esq. to discuss. Mr. Kadochnikov, Esq. advised that he did not have anything to do with the Motion and that it was really Daniel Knox's filing. Therefore, I called Daniel Knox,

Esq., Plaintiff's counsel who is admitted to this District Pro Hac Vice. As soon as Plaintiff's counsel took the call, he was irate about *his* money and the fact that this agreement had taken so long to consummate. Plaintiff's counsel was personally insulting, including accusing undersigned counsel and his firm of being idiots, not knowing what we were doing and making various baseless accusations that we were in some way hindering *his* money. Plaintiff's counsel's attitude made it a contentious phone call from the outset.

96. When Defendants' counsel reminded Plaintiff's counsel of the fact that none of these assumptions on his part were true, I also reminded him that he had not been in communication with our firm for nearly three months despite having our email address and cell phone numbers for both undersigned counsel and Richard Flynn, Esq.

97. I further advised that I was calling him in good faith to try to resolve the matter without the need for further litigation [as this Honorable Court stridently encourages attorneys to do] before I even had a chance to review the motion that had been filed since I had only just seen the PACER notification.

98. I further reminded Plaintiff's counsel that I would not tolerate nor did I appreciate the personal attacks on counsel, especially when I was working diligently to conclude this matter and had even extended several collegial courtesies to Plaintiff's counsel personally, including calling him and reminding him on at least three

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

separate occasions that we had telephone conferences with Judge Williams after he failed to initiate each of the same.

99. After this admittedly contentious exchange, we each cooled our tempers and spoke about the matter further. I advised Plaintiff's counsel that **we were still in need of Plaintiff's which had not been provided to date** and that while Plaintiff's counsel wanted to complain and blame Defendants and undersigned counsel for delays in receiving *his* money, **Plaintiff's counsel had equally failed to provide the Plaintiff's signature in the intervening three months.**

100. I explained to Plaintiff's counsel that our clients had only just authorized our firm to deposit the May 4, 2020 check into our Trust account three days prior to this telephone call, that we had done same the preceding day and that on review of our banking records on the morning of June 18, 2020, the funds were now cleared and ready for transmittal. I asked Plaintiff's counsel to provide his client's signature, which he advised would be provided immediately and asked that if this would conclude whatever issues were asserted in the pending motion, especially in light of the fact that he had taken absolutely no steps to confer with us about this issue prior to filing same.

101. Plaintiff's counsel then advised that if he had reasonable assurances that the settlement was going to occur through deposit of the initial $40,000.00 payment into his trust account and receipt of *copies* of our client's signatures, he would reconsider his position and advise re: the withdrawal of the motion within a week.

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

102. Our telephone call concluded on as civil a note as was practicable in light of Plaintiff's counsel's baseless and acrimonious assumptions, insults and flat out lies about undersigned counsel, our firm and Defendants.

103. To demonstrate good faith on our part, undersigned counsel saw to it that copies of the Defendants' signed settlement documents were sent via Fedex overnight, along with the initial installment check for $40,000.00, to Plaintiff's counsel. See Exhibit Y.

104. The following week, contrary to his position on the June 18 telephone call, Plaintiff's counsel then objected to the fact that we had sent a *copy* of the settlement agreement instead of the originals. Defendants' counsel promptly responded to the substance of this objection via email and, again in good faith and an effort to conclude this matter, sent another Fedex Overnight envelope immediately to Plaintiff's counsel the same day to ensure his prompt receipt of the documents. See Exhibit Z.

105. Thereafter, Plaintiff's counsel next objected because apparently the Fedex did not contain all of the original signatures and instead contained at least one copy of a signature. See Exhibit AA. As a result, Defendants' counsel carefully reviewed the file, determined that a harmless error had been made with the copy instead of the original being sent, and sent a third Fedex Overnight mailer. See Exhibit AB.

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

106. All of the Fedex mailing took place within a week. There was absolutely no bad faith, undue delay or intentional frustration of Plaintiff's counsel's purpose in any of these efforts. However, after all of this, the largest insult was still to come.

107. Despite Plaintiff's counsel's representation that he would transmit his client's signature promptly on June 18, 2020 and the fact that he had received a copy with all of Defendants' signatures and the check by June 19, 2020, **Plaintiff's counsel never even transmitted Plaintiff's signature page until July 13, 2020.** See Exhibit AC.

108. Therefore, Plaintiff's counsel has no one to blame but himself for this delay. Indeed, that delay, coupled with the apparently false representation by Plaintiff's counsel that he would send his client's signature promptly on June 18, 2020 is quite troubling.

109. Additionally, while the monthly payments under the Settlement Agreement are due on the fifteenth of each month, beginning the month after the Settlement Agreement was executed, Kamaljit Singh, in a display of good faith, transmitted the $2,500.00 payment for July 2020 on July 14 ,2020 via overnight express to Plaintiff's counsel.

**110. Therefore, enough is enough. Defendants have provided their signatures and their money in more than a timely fashion.**

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

**111. Furthermore, Defendants' counsel and his firm have performed in all ways throughout this case in a reasonable, responsible and professional manner.**

112. Yet, when Richard M. Flynn, Esq. contacted Plaintiff's counsel as late as July 15, 2020 to confer with Plaintiff's counsel about the fact that all funds and signatures have been exchanged, therefore Plaintiff's counsel could withdraw the Motion, allowing the parties and their counsel could walk away from each other in the most professional circumstances possible, Plaintiff's counsel refused to withdraw his motion. When asked why he refused, his response was that he *already filed, so he just wanted to see what the Court would do with it.*

113. However, in testing the waters, Plaintiff's counsel is wasting the time and resources of the Honorable Court, Defendants and their counsel.

114. Furthermore, *there was and is no basis* for Plaintiff's counsel to receive an additional fee award for Court approval of the Settlement Agreement *since those exact fees along with all other legal fees were to be paid from the $130,000.00 settlement and any further fees were specifically precluded in the language of the Settlement Agreement attached as Exhibit Z.*

115. **One of the critical terms of that Agreement is that all of Plaintiff's legal fees were to be paid as part of the agreed upon sum.** Therefore, Plaintiff's actions to seek further legal fees through this motion are not only frivolous but they are also in direct violation of the agreement.

FLYNN & ASSOCIATES, LLC
439 Monmouth Street, Gloucester City, NJ 08030

116.     Furthermore, the arguments raised in Plaintiff's Motion ignore the fact that all of the false assumptions raised by Plaintiff about allegedly improper discovery responses, dilatory behavior and other conduct were never granted any relief by the Court during litigation. Moreover, these were addressed in the settlement to the extent that it is a complete resolution of the matter by the parties of all claims against the other party(ies) and their counsel in Exhibit Z.

117.     As a result, Defendants now bring this Opposition and Cross Motion for Sanctions pursuant to Rule 11 and 28 U.S.C. § 1927, respectfully requesting the Court strike the portions of Plaintiff's Motion, ECF # 45, which address anything beyond the bare grounds for approval of the settlement agreement.

118.     Defendants and their counsel have no opposition to the Plaintiff's bare grounds for approval of the Settlement Agreement in this matter. Rather, Defendants' Cross Motion here focuses entirely on the specious, vexatious and frivolous nature of Plaintiff's demand for sanctions pursuant to Rule 11 and 28 U.S.C. § 1927.

119.     Defendants, by and through counsel, made proper service of this Cross Motion upon Plaintiff's counsel on July 20, 2020.

120.     Defendants and their counsel reserve the right to seek sanctions including professional fees incurred as a result of Plaintiff's Motion and shall appropriately supplement this filing with an Affidavit of Services in the event that Plaintiff's

counsel fails to cure the conduct alleged to violate Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.

I certify that the foregoing statements made by me are true. I am aware that if any statement is willfully false, I am subject to punishment.

Respectfully submitted,

Dated: 7/20/2020

**Flynn & Associates, LLC**

by

**Alex Flynn, Esquire**

**FLYNN & ASSOCIATES, LLC**
439 Monmouth Street, Gloucester City, NJ 08030